Good morning, Your Honors. For the plaintiffs, I'm Shannon Lesrudin. I'd like to reserve two minutes of my time, please, for rebuttal. Yes. Thank you. Your Honors, I would submit that what drove this Court's ruling in the Cavalero case was largely the very overbroad, diffuse, quite numerous claims that were brought by the plaintiffs in that case, which led the Court to conclude that interpretation of the collective bargaining agreement was going to come up somewhere. And in particular, there were a couple of points. There were two issues in particular that were noted in the Cavalero decision as to why interpretation and not merely consultation of the collective bargaining agreement were going to be necessary. And neither of those issues are applicable here. One is that because the plaintiffs in that case made claims for unpaid training time, the Court concluded there would need to be some interpretation of the collective bargaining agreement to determine whether timely requests for training were made. Another had to do with unpaid meal time and the question implicating the collective bargaining agreement. And that issue had to do with whether or not meals were taken in the patient care area. In this case, the District Court appeared to simply assume that Cavalero means that when unionized employees bring state wage claims, they're going to be preempted because naturally something is going to come up from the collective bargaining agreement that's going to require interpretation. But it's simply not the case in the District Court nor the defendants identified any specific issues in this case that would actually require interpretation. The two arguments I see that the defendants have made that would require interpretation is one, that there was a process in place set forth in the CBA by which employees could request to be paid for additional time if their work took them beyond their scheduled shifts. That's not an argument under Massachusetts state law because the law is whether or not the employer suffers or permits the work. It has nothing to do with whether the employee requested to be paid for work that was performed. And that's been emphasized by the appeals court, the Massachusetts appeals court's very recent decision in the Vitale v. Reit management case. The second potential issue that was raised in our reply brief which was issued three days before we submitted the reply, yes. The second issue is that the defendants made a very vague, not specific at all, but very vague claim that they may be entitled to some offsets. They didn't say exactly what, but that there may be some offsets that they would be entitled to because of premium pay rates set forth in the collective bargaining agreement that the employees would receive that even if they worked unpaid hours that somehow those offsets might make up for those unpaid hours and thus be a defense. We submit that is not a defense under Massachusetts state law to the extent that this court held or assumed that it was in the Cavallaro case. The plaintiffs in that case did not argue that. In fact, they conceded that Massachusetts law would mirror federal law with respect to offsets. But if you go back and actually look at, and we cited in our briefing, the FLSA regulations and the case law regarding offsets, federal offset law has to do with whether or not certain types of premium pay rates might offset overtime or pay rates under federal law. This is very different from we submit Massachusetts law, which we submit under Camara, Summers, Cooney, would not allow for such offsets. And that argument was not made in the Cavallaro case. But counsel, even beyond those arguments, if one looks at the collective bargaining agreement, you look at Article 4, it talks about hours of work. There are these provisions on weekend compensation, schedules, 10-hour positions, 12-hour positions, evening duty. I mean, won't those types of provisions be implicated here in determining what your clients are owed in terms of compensation that they say they have not received? Not at all, Your Honor. Not at all. And I would urge the court to look at the Vitale v. Reitt management case, which just came out from the appeals court, because that puts Massachusetts law at odds with some of the other cases that defendants have cited that go to the issue of, well, should the employer have known or taken extra steps to know what time was worked and that's paid for? Under Vitale v. Reitt, it's emphasized that the Massachusetts standard is simply, did the employer suffer or permit work? It does not matter what a contract or a CBA says about, well, we'll pay you for these hours, we won't pay you for these hours, we'll even pay you for hours we don't even really have to pay you for under state law. None of that is relevant under state law. Under state law, if you worked the time, you get paid for it, period. We don't need to turn to the collective bargaining agreement to determine whether or not these employees were paid for all of the time that they worked. The CBA may provide for payment for additional time. All these provisions that you're just referring to may give them greater rights than they would have under state statute, but we're not suing them for those greater rights. We're simply suing for the time that they worked and they weren't paid. Now, also, another very important distinction from the Cavalero case is that in the Cavalero case, this court did not decide whether or not the overtime claim was preempted. The case was focused on the 148 claim, but the court, noting that this area of law is uncertain and it's uncertain where the Supreme Court is going on this, this court didn't need to address the overtime claim because in that case the defendants were exempt from the overtime statute because it was a hospital. And here we don't have that exemption because the defendants, in this case, are not a hospital. So it raises a different issue and this court even seemed to recognize in the Cavalero case that the overtime claim may be different, but it didn't need to address it there. So that's another very important distinction. The big takeaway issue I would submit is that the district courts are frankly over-reading Cavalero and what Cavalero said to lead to a conclusion that really flies in the face of Supreme Court precedent that unionized employees, simply because they are protected by a collective bargaining agreement, can't pursue independent state statutory claims because defendants are always going to come up with some argument as to what we need to look at. There's going to be something that needs to be referred to and interpreted in the CBA, but the law is clear that it can't be merely consultation. There needs to be underlined and it needs to be real interpretive. Something really needs to be actually interpreted. And here the defendants nor the district court even identified specifically what that would be. They just said, well, and if you look at the Reyes case, I'll submit that's one of the district court decisions that I believe over-read Cavalero. But at the beginning of the Reyes case, Judge Woodlock actually said, how do I know what's going to come up in the Reyes case? And he, in fact, didn't even decide at the beginning whether or not there was complete preemption. He said the facts need to be developed here. I don't even know whether I might need to interpret the collective bargaining agreement. He sent the parties off to go do discovery, develop the factual record, develop what the disputes were so he could then come back and look at it. Counsel, I'm missing something. Perhaps you could clear it up for me. If the CBA addresses what is compensable work and what the requirements are for requesting permission to work, overtime for example, and the state law standard is they're entitled to payment if the employer suffers or permits them to do the work, are you saying that the state law trumps the provisions of the CBA? Oh, absolutely. The state statutory rights are non-waivable. The CBA cannot waive the state law rights. I believe that's very clearly established in the case law in some of the cases. Let me be clear. So the CBA says before you work these overtime hours, you have to get permission. The employee works does not get permission. It is your position that the CBA does not preclude a judgment in state court that she had to be paid for those hours, although she did not get permission? Yes, absolutely, because the state statutory rights are non-waivable rights. I believe this court stated that in Cavallaro. In one of the cases cited in our briefing, Wadsworth v. Grand Willia, which was another case where the court found no complete preemption, also talks about the non-waivability of the state statutory rights. So that's correct. Union employees do not, cannot have lesser protections under state statutes than non-union employees. That would just fly in the face of federal labor law. The Supreme Court has made that clear. Levitas v. Bradshaw, you don't waive your rights at the door simply because you have other protections by virtue of being a union employee. But what is it about this case that makes it so simple to actually counsel so that none of the collective bargaining agreements are implicated? You seem to portray it as a case where what's happened to your clients is that in order to do all the record keeping they have to do, they simply cannot do it within the normal work hours, and so they spend a lot of time making computer entries, which the employer would certainly be aware of. But that's the kind of work that forces them to put in more hours and ultimately overtime. And nothing else is involved here. Is it really that, is it really that simple? Yes. Our claim in this case is very discreet. It's right in the complaint. That's all we're claiming. It's not like Cavalera where they said, oh, well maybe there's unpaid training time and unpaid meal time and maybe work after hours and this and that. And common law claims are 13 causes of action in that case. Here we have two. One is that they worked this time that they weren't paid for, and two, that some of that time took them over 40 hours a week so they didn't get premium overtime pay, which they're entitled to under the state overtime law and that is not and cannot be waived by the collective bargaining agreement. And are those claims affected at all by whether that work was being done during the day or at night, whether they were on a 10-hour day or a 12-hour day, anything like that? State law does not care. If the employer suffers or permits the work and the employer knew or should have known or had reason to know, see Vitale v. Reit, the employer must pay for it. It doesn't matter whether the employer says, oh, we paid you a little extra because you got this 10-hour premium that's in this DBA. It's not a defense under state law. I also submit that even getting into the weeds, so to speak, as to whether or not we are correct in our assertion that Massachusetts law, the Summers case, the Cooney case, as well as the Camara case, would not allow for such offsets. That is quintessentially a state law issue. And again, I want to emphasize what we've stated in our briefs that this is a defense that the defendant has vaguely put out there to these claims. A defensive invocation of the collecting bargaining agreement does not trigger complete preemption and it's really more suitable for the state court to be addressing those what may be somewhat novel issues in the first instance rather than the federal court digging into them when it's being raised as a defense. If I can make one brief additional point before my initial time is up. There's discussion in the defendant's brief about drawing, again, I believe too heavily from one sentence in this court's Cavallaro decision that any claim for compensation above state minima must be saying, nor do I think what this court could have been saying in light of Supreme Court precedent, is that only state law minimum wage claims are the ones that can't be preempted. I think what that meant, what that should mean in light of the Supreme Court precedent is that the state court minimum here is that under 148 employees must be paid for all hours that they worked. Here we're saying that there were hours that the plaintiffs were not paid. State minimum says you've got to be paid for that. You can't read that statement to say that only a minimum wage claim would not be preempted because that would fly in the face of Levatas and this court's decision, the Fante case, that looking to a collective bargaining agreement simply to see what the wage rate is for the damages phase of the case is not interpretation, it's merely consultation because wages will be above minimum wage, particularly where you have a collective bargaining agreement. Thank you. Good morning, your honors. Doug Hoffman for the defendant. Plaintiffs are trying to distinguish Cavallaro in the first instance by arguing the claims there were very diverse and far reaching, but they're really not very different than what we're looking at here. They're both claims for off-the-clock work. Here we have the claims that work was done before and after the shifts. Cavallaro said the same thing. That was the claim there too. They also added some lunch and training time as well, but it's essentially the same claim. So the reason for preemption in Cavallaro wasn't because the claims were diverse or far reaching. It wasn't the complexity of the case. In fact, the court examined each individual claim, looked at the elements of each claim and determined that interpretation of the CBA was required to resolve those claims. And that's why the district court here said, well, that's a distinction without a dispositive difference. It wasn't the breadth of the claims there. In any event, both claims here clearly require interpretation of the CBA. I'll start with the Weekly Wage Act claims. All that Act requires is that wages earned are timely paid, but you have to show from the plaintiff's perspective that wages were actually earned. And they're going to need to show that Bay State suffered or permitted them to work off-the-clock in order to prevail on that claim. That's not a defense. That's an element of their claim. Now the plaintiffs here are saying they worked off-the-clock before and after their shifts to complete some patient documentation. And the CBA addresses that exact issue. This is the CBA that the plaintiff's union negotiated for them, says that they're supposed to complete documentation during their shift. But if they can't, they're supposed to, first of all, notify their manager so Bay State would know they were doing the work. And second, they're supposed to request permission to do that, which is not supposed to be unreasonably withheld. So to determine if the hours worked here are compensable, the court is going to need to interpret that provision, first of all, to see whether proper notice was given of the work and whether permission was unreasonably withheld, if it was withheld. But why does that require interpretation of the agreement? I mean, their argument is that even if they didn't go through the steps that are contemplated in the CBA, if they're making all of these computer entries, the employer is aware of them and is suffering or permitting the work to be done. And if that's the case, the employer is obligated to pay for that work. That's a pure fact, sounds like a pure factual dispute that really has nothing to do with the provisions of the CBA that you're citing. Well, Your Honor, actually, if you read the Vitale case closely, and I would encourage all of you to do that, what that case actually says is it doesn't say that computer entries are enough or anything like that. As a matter of fact, we can test that just mere computer entries in a database are enough to put the employer on notice. What Vitale says is you have to look at all the facts and circumstances to see if the employer was on notice that work was being performed. Now in that case, Vitale's, they moved for a summary judgment that the employer did, and they said, well, these plaintiffs didn't follow the correct procedure that we set out. And the employer said, that's dispositive. If they didn't follow that, it doesn't matter if we were aware of the work. And the court said, no, that's not true. You have to look at all the facts and circumstances. But Vitale also said that if the employer has a mechanism for informing the employer that work is being performed, and the plaintiff doesn't follow that procedure, that's a point in the employer's favor. It's definitely relevant. Even if it's not dispositive, we're going to say it is. But even if that's not true, it's definitely relevant. And all we need to show to show preemption is that it's plausible that interpretation of the CDA is going to be necessary to resolve that claim. Now the plaintiffs are saying the notice clause isn't relevant. And if you really read the briefs closely, what they're saying, it's not relevant because we're going to argue that those computer login records are sufficient to establish constructive knowledge. And they have no intention of referring to the CDA, the notice provision at all. So in other words, they're saying, well, the CDA isn't relevant because we say it's not. Well, there's a lot of problems with that position. You can't ignore the CDA. What about the permission unreasonably withheld? It would seem to me that that is a classic arbitral type question. And that if an arbitrator were to find that the work was done, but the permission had not been obtained, and that permission had not been unreasonably denied, I'd be very doubtful that a state court wage claim would, in fact, lie under those circumstances. Because you've got an arbitral award interpreting on particular facts that was within the employer's prerogative not to pay because the wages had not been earned. Correct. The argument the plaintiffs are making, we should just ignore the CDA because we're not going to use it, that's exactly the type of artful pleading that Caballero and Caterpillar have talked about. The plaintiffs can't just refuse to mention the CDA. That's not what makes it irrelevant. But what if she's saying, we'll concede that the CBA provisions were not complied with, period, but you suffered us to work? Well, suffer to work, remember, means knowledge, whether it's actual knowledge or constructive knowledge. And the mechanism for the employees here to put the employer on knowledge is that provision in the CBA. It tells them this is how you're supposed to do it. I want to know why is that so? If she concedes that they didn't comply with any of the provisions of the CBA. She concedes they didn't comply with the provisions. Well, I think that's still going to be an issue. The CBA can define what is compensable time. You said it can? It absolutely can. So it can trump state law? I believe in that instance it can. But in any event, at a minimum, that clause is going to be relevant to determining whether the employer was on notice. And by the way, the concede in their briefs that those log in records, they don't capture all of the off the clock time. All they say is that's going to capture much of the time. So I don't know how they're going to prove constructive knowledge for the rest of those hours. That's going to have to be done another way. So in other words, your honors, even if that notice clause isn't as positive on the merits, it's certainly relevant. And that's all we have to show to show preemption. And another area of interpretation, by the way, is the issue of whether and how much ago the CBA has very similar premium paid provisions to what we saw in Cavallaro. Overtime after 37 and a half hours. Overtime on weekends. And some of the nurses actually have the option to be paid by the visit instead of the hour. Those are the types of provisions, just like in Cavallaro, that require some interpretation to figure out what the wages were owed. And that is the central issue in the case. Now plaintiffs claim that's not enough because that's just a calculation of a remedy and they cite the Lovatis case for that. In Lovatis, there was no dispute about the amount owed. It was just when the wages were paid. Here, rather, the remedy and the liability are pretty much intertwined since the amount owed is the central question in the case. And looking back at the Adams decision by this court, there the court found preemption because figuring out what the remedy was, the regular rate of pay, required it to interpret multiple CBA provisions. And even the Supreme Court in Lingle said that a state law remedy that turns on interpretation of a collective bargaining agreement is also preempted. Counsel, would you agree that it seems like the district court did make an error of law in this sentence. It seemed to assume that the jurisdictional standard, on the complete preemption issue, that the jurisdictional standard and the standard that applies as to whether the motion for judgment on the pleading should be granted are the same. The court seemed to apply sort of the same plausibility standard. I mean, the standards are very different. I mean, there might be the standard for jurisdiction seems to be pretty low, a kind of plausibility standard. Is the claim plausible that the CBA has got to be interpreted? But when you come to actually then dispatching the claims when you're in federal court, that's a tougher standard. And some of your arguments seem to be, as I hear them, well, yeah, there's plenty to get into federal court. But there does seem to be some very serious issues as to whether the claims, in fact, are completely preempted. I guess I didn't, in Cavallaro it seems to play the same standard, whether it's talking about removal or whether it's talking about dismissal. The point is the claims can be brought, they're supposed to be brought by the arbitrator, to the arbitrator. I did not see that distinction. It appears the standard under either is whether it's plausible that the interpretation of the CBA is going to be required. We would submit it's much more than plausible. It's almost definitive. At least that notice provision certainly is going to need to be interpreted. It's relevant, maybe not dispositive, but certainly relevant. Now we could stop there on the Wage Act claim. We also have the crediting issue that we talked about. Cavallaro recognized that the FLSA crediting provisions are allowed under Massachusetts law. So those premium pay clauses are also relevant for that reason, but we don't even need to come to the offsets. But plaintiffs do say the discussion of crediting in Cavallaro is irrelevant because they don't concede that crediting is allowed. They cite the Camara case, which is very different. I think we covered that in their papers. That's talking about taking deductions from wages already earned as opposed to determining how many wages were earned in the first place. Turning to the plaintiff's overtime claim, first of all, the plaintiffs criticized the district court for not separately analyzing that claim. But the reason is plaintiffs didn't make that argument below. The only point at which they even separately recognized the overtime claim and tried to make a separate argument was a two-sentence footnote in their reply brief on the motion to remand. That's the standard plaintiffs agreed to below. They didn't raise it at all in the motion for judgment on the pleadings. And in fact, they waived any additional briefing on that motion and oral argument. And even in that footnote, all they said was that Cavallaro didn't address the overtime claim, and they didn't develop any real argument. So they've really waived that argument. Passing reference in a footnote below is certainly not sufficient to preserve that argument for liability under the overtime law if someone worked over 40 hours a week. And that still brings us back to how many hours are compensable. We'll have to look at the notice provision. Second, you still need to look at the premium pay provisions to determine whether and how much wages are owed. In Swift v. AutoZone, the SJC explicitly recognized that some kind of premium payments can be offset. Not only are they not included in the regular rate for computing overtime, but they're also credited toward any overtime payments required. And then third, interpretation of those provisions is going to be required to calculate the regular rate for overtime purposes to determine the remedy. Unless there are any questions? Thank you. I want to stress once again that the defendant's arguments regarding the collective bargaining agreement are being raised as a defense. And the Supreme Court in Caterpillar, I believe, addressed this directly head-on. It is true that when a defense to a state law claim is based on the terms of a collective bargaining agreement, the state court will have to interpret that agreement to decide whether a state claim survives. But the presence of a federal question, even a 301 question in a defensive argument, does not overcome the paramount, the well-pleaded complaint rule. I also want to point out an answer to the question raised before about whether these state law claims are waivable. It's cited in our brief, the Phlebot case from the First Amendment. It can be read broadly to preempt non-negotiable rights conferred on individual employees as a matter of state law. These wage claims are non-negotiable. Crocker v. Townsend Oil, the SJC has made very clear that these are non-negotiable. These are non-waivable. And once again, I urge that these issues as to whether or not these offsets would be allowed, I submit they would not. Under Summers, under Cooney, Camara was a different kind of story, but Summers and Cooney go to the question of whether, well, if they were paid higher rates for reasons that we didn't have to pay them higher rates, can that be an offset for wage claims? And the SJC has said no. But to the extent that's an unsettled question of state law, that's really appropriate for state courts to be addressing, not for a federal court to be deciding to determine whether as a defense there might need to be interpretation of a collective bargaining agreement. And just as Judge Woodlock did in the Hernandez v. Harvard case, he said those are arguments the defendants can go raise in state court. This is a defense. I'm not, I don't need to, I'm not going to interpret, I don't need to interpret the collective bargaining agreement to adjudicate the plaintiff's claims. There are no more questions. The plaintiff will rest. Thank you. Thank you.